1  **PEIFFER WOLF CARR**
   **KANE CONWAY & WISE, LLP**
2  SARA BETH CRAIG (Bar No. 301290)
3  555 Montgomery Street, Ste. 820
   San Francisco, CA 94111
4  Telephone: 415-766-3544
   Facsimile: 415-840-9435
5  Email: scraig@peifferwolf.com

6  *Attorney for Plaintiff & the Proposed Class*

7                  **UNITED STATES DISTRICT COURT**

8              **EASTERN DISTRICT OF CALIFORNIA**

9                     **SACRAMENTO DIVISION**

10

11  **VALERIE MARTINEZ-TURNBOW**, *on*          **CLASS ACTION COMPLAINT** FOR
12  *behalf of herself and as parent and guardian*   **DAMAGES, INJUNCTIVE RELIEF, AND**
    *of her minor child, John Doe, and on behalf*    **EQUITABLE RELIEF FOR:**
13  *of all others similarly situated,*

14          Plaintiff,                              1.  **Negligence**
                                                    2.  **Breach of Implied Contract**
15      v.                                          3.  **Breach of Fiduciary Duty**
                                                    4.  **Invasion of Privacy**
16                                                  5.  **Declaratory Judgment**
    **POWERSCHOOL HOLDINGS, INC.,**                 6.  **Unjust Enrichment**
17
        Defendant.                              **DEMAND FOR JURY TRIAL**
18

19

20                     **CLASS ACTION COMPLAINT**

21          Valerie Martinez-Turnbow, individually and as a parent and guardian of her minor child,

22  and on behalf of all others similarly situated, by and through undersigned counsel, hereby alleges

23  the following against PowerSchool Holdings, Inc. ("Defendant" or "PowerSchool"). Facts

24  pertaining to Plaintiff, her minor child and their experiences and circumstances are alleged based

25  upon personal knowledge, and all other facts herein are alleged based upon the investigation of

26  counsel and, where indicated, upon information and good faith belief.

27                     **NATURE OF THE ACTION**

28      1.      Plaintiff brings this class action lawsuit against Defendant for its failure to

                                           1

properly secure and safeguard Plaintiff's minor child's and other similarly affected persons including students' parents' and Defendant's employees' (collectively defined herein as the "Class" or "Class Members") personally identifiable information ("PII") including names, addresses, Social Security numbers, medical information, and other personally identifiable information (collectively, the "Private Information") from cybercriminals.

2.     PowerSchool is an EdTech platform specializing in data collection, storage, and analytics. It went public in 2021 and shortly thereafter was valued at nearly $7 billion.

3.     PowerSchool's primary customers are schools and school districts.

4.     By persuading those customers to implement its products in schools, PowerSchool gains virtually unfettered access to the data of the children who attend those schools and their parents, including highly sensitive Private Information.

5.     Millions of school-age children use PowerSchool products. PowerSchool claims to reach more than 50 million school-age children—or 75 percent of the students—in North America. Its products have been deployed in more than 90 of the largest 100 districts by student enrollment in the U.S.

6.     The data PowerSchool collects far exceeds traditional education records of school-age children, including thousands of person-specific data fields.

7.     PowerSchool does not fully disclose what data—or even categories of data—it collects from school-age children or their parents.

8.     At minimum, PowerSchool's public disclosures mention various information that PowerSchool "may" collect from and about its users:

**School records**

• Enrollment data

• Student identifiers

• Academic program membership

• Extracurricular program membership

• Transcript data

• Student grades

• Student assessments

**Contact information**

• Student address

• Student email address

• Phone numbers

**Demographic information**

• Student name

• Student date of birth

• Student Social Security number

• Parent or guardian name

**Disciplinary and behavioral information**

• Student conduct data

• Student behavior data

• Student social-emotional learning indicators and inputs

• Student evaluation and management data

**Medical information**

• Physical and mental disabilities

• Immunization records

• Treatment providers

• Allergies

9.      Entities like Defendant that handle Private Information have an obligation to employ reasonable and necessary data security practices to protect the sensitive, confidential and personal information entrusted to them.

10.     This duty exists because it is foreseeable that the exposure of such Private Information to unauthorized persons—and especially hackers with nefarious intentions—will result in harm to the affected individuals, including, but not limited to, medical and financial identity theft, invasion of their private health matters and other long-term issues.

11.     The harm resulting from a data and privacy breach manifests in several ways,

3

including identity theft and financial and medical fraud, and the exposure of a person's Private Information through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives.

12.     Mitigating that risk requires individuals to devote significant time, money and other resources to closely monitor their credit, financial accounts, health records and email accounts, as well as to take a number of additional prophylactic measures.

13.     In this instance, all of that could have been avoided if Defendant had employed reasonable and appropriate data security measures.

14.     On or about January 7, 2025, Defendant confirmed that it suffered a cybersecurity incident that allowed a threat actor to steal the personal information of students and teachers from school districts using its platform.[1]

15.     PowerSchool disclosed that hackers accessed its customers' highly sensitive information — including student Social Security numbers, grades, and medical information, "and other unspecified personally identifiable information belonging to students and teachers" by breaking into PowerSchool's internal customer support portal using a stolen credential (the "Data Breach").[2]

16.     To date, Defendant declined to disclose how many individuals have been affected by the Data Breach.

17.     Moreover, on information and belief, Defendant failed to mount any meaningful investigation into the breach itself, the causes, or what specific information of Plaintiff and the proposed Class was lost to criminals.

18.     Defendant's "disclosure" amounts to no real disclosure at all, as it fails to inform,

---

[1] *See PowerSchool hack exposes student, teacher data from K-12 districts*, https://www.bleepingcomputer.com/news/security/powerschool-hack-exposes-student-teacher-data-from-k-12-districts/ (last visited Jan. 9, 2024).

[2] *See* https://techcrunch.com/2025/01/09/powerschool-says-hackers-stole-students-sensitive-data-including-social-security-numbers-in-data-breach/ (last visited Jan. 9, 2024).

4

with any degree of specificity, Plaintiff, her minor child and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach has been severely diminished.

19.     As a direct and proximate result of Defendant's failure to implement and to follow basic security procedures, Plaintiff's and Class Members' Private Information  is now in the hands of cybercriminals.

20.     Plaintiff, her minor child and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, misappropriation of health insurance benefits, intrusion of their health privacy, Private Information being disseminated on the dark web, and similar forms of criminal mischief, risk which may last for the rest of their lives.

21.     Plaintiff, her minor child and Class Members have also suffered concrete injuries in fact including, but not limited to, lost or diminished value of Private Information, lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, loss of benefit of the bargain, lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, and actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails.

22.     Consequently, Plaintiff, her minor child and Class Members must devote substantially more time, money and energy to protect themselves, to the extent possible, from these crimes. *See McMorris v. Lopez*, 995 F.3d 295, 301 (2d Cir. 2021) (quoting *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) ("Why else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities.")).

23.     Plaintiff, on behalf of himself, her minor child, and all others similarly situated, therefore brings claims for (i) Negligence; (iii) Breach of Implied Contract; (v) Breach of Fiduciary Duty; (iv) Invasion of Privacy; (v) Declaratory Judgment and (vi) Unjust Enrichment. Plaintiff seeks damages and injunctive relief, including the adoption of reasonably necessary and appropriate data security practices to safeguard the Private Information in Defendant's custody in order to prevent incidents like the Data Breach from occurring in the future.

5

**PARTIES**

***Plaintiff Valerie Martinez-Turnbow***

24.     Plaintiff Valerie Martinez-Turnbow is, and at all times mentioned herein, was an individual citizen residing in Collin County, Texas. Her son attends a school in the Lovejoy Independent School District that uses PowerSchool products. As a result, she has provided her and her son's Private Information to PowerSchool.

25.     Plaintiff Valerie Martinez-Turnbow's minor child John Doe is, and at all times mentioned herein, was an individual citizen residing in Collin County, Texas. He attends school in the Lovejoy Independent School District. His school uses PowerSchool products and services. As a result, his Private Information was collected by PowerSchool.

26.     Plaintiff understandably and reasonably believed and trusted that her own and her minor child's Private Information provided to Defendant would be kept confidential and secure and would be used solely for authorized purposes. Upon information and good faith belief, Plaintiff Martinez-Turnbow's and John Doe's Private Information was accessed in the Data Breach.

***Defendant PowerSchool Holdings, Inc.***

27.     Defendant PowerSchool Holdings, Inc. is Delaware corporation, with its headquarters located at 150 Parkshore Drive, Folsom, California 95630.

**JURISDICTION & VENUE**

28.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members and minimal diversity exists because Plaintiff, her minor child, and many putative class members are citizens of a different state than one or more Defendant.

29.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

30.     This Court has personal jurisdiction over Defendant because it operates and maintains its principal place of business in this District. Further, Defendant is authorized to and

CLASS ACTION COMPLAINT

regularly conducts business in this District and makes decisions regarding corporate governance and management of its business operations in this District, including decisions regarding the security of its customers' Private Information.

31.     Venue is proper in this District under 28 U.S.C. § 1391(a)(1) through (d) because: a substantial part of the events giving rise to this action occurred in this District and Defendant has harmed Class Members residing in this District.

## COMMON FACTUAL ALLEGATIONS

**A.     *Defendant Collects a Significant Amount of Private Information.***

32.     Defendant is an EdTech company that purportedly provides educational products to school districts.

33.     Plaintiff, her minor child and Class Members are current and former students of Defendant's customers, students' parents, and employees of Defendant.

34.     As a condition of receiving educational and/or employment services from Defendant, students, students' parents and Defendant's employees are required to entrust it with highly sensitive personal and health information.

35.     While providing its services, Defendant receives, creates, and handles an incredible amount of Private Information, including, *inter alia*, names, addresses, dates of birth, addresses, phone numbers, email addresses, Social Security numbers and medical information, and other information that Defendant may deem necessary to provide services to schools and conduct its business.

36.     Students, their parents, and Defendant's employees are required to provide and to otherwise entrust their Private Information to Defendant to receive educational services and/or employment services, and, in return, they reasonably and appropriately expect that Defendant will safeguard their highly sensitive Private Information and keep it secure and confidential.

37.     The information held by Defendant in its computer systems included the unencrypted Private Information of Plaintiff, her minor child, and Class Members.

38.     Upon information and good faith belief, Defendant made promises and representations to its customers that the Private Information collected from them as a condition

CLASS ACTION COMPLAINT

of obtaining educational services from Defendant would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

39.     Due to the highly sensitive and personal nature of the information Defendant acquires and stores with respect to its customers' clients, Defendant is required to keep customers' clients' Private Information private; comply with industry standards related to data security and the maintenance of their customers' clients' Private Information; inform their customers' clients of its legal duties relating to data security; comply with all federal and state laws protecting customers' clients' Private Information; only use and release customers' clients' Private Information for reasons that relate to the services it provides; and provide adequate notice to customers' clients if their Private Information is disclosed without authorization.

40.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

41.     Without the required submission of Private Information from Plaintiff, her minor child and Class Members, Defendant could not perform the services it provides.

42.     Plaintiff, her minor child, and Class Members relied on Defendant to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

43.     Upon information and good faith belief, Defendant's actions and inactions directly resulted in the Data Breach and the compromise of Plaintiff's, her minor child's, and Class Members' Private Information.

**B.      *The Data Breach***

44.     On or around January 7, 2025, Defendant announced that its customers' clients' Private Information stored on their systems had been compromised.

45.     Specifically, PowerSchool has confirmed it suffered a cybersecurity incident on or around December 28, 2024 that allowed a threat actor to steal the personal information of

CLASS ACTION COMPLAINT

1   students, their parents, and teachers from school districts using its PowerSchool SIS platform.[3]

2       46.     Defendant has not disclosed the identity of the cybercriminals who perpetrated

3   this Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited,

4   and the remedial measures undertaken to ensure such a breach does not occur again. To date,

5   these omitted details have not been explained or clarified to Plaintiff, her minor child and Class

6   Members, who retain a vested interest in ensuring that their Private Information remains

7   protected.

8       47.     Defendant had obligations created by the FTC Act, contract, common law, and

9   industry standards to keep Plaintiff's, her minor child's, and Class Members' Private Information

10  confidential and to protect it from unauthorized access and disclosure.

11      48.     The Data Breach occurred as a direct result of Defendant's failure to implement

12  and follow basic security procedures, and its failure to follow its own policies, in order to protect

13  Plaintiff's and Class Members' Private Information.

14      ***C.    Defendant Knew the Risks of Storing Valuable Private Information & the***

15  ***Foreseeable Harm to Victims.***

16      49.     Defendant was well aware that the Private Information it collects is highly

17  sensitive and of significant value to those who would use it for wrongful purposes.

18      50.     Defendant also knew that a breach of its systems—and exposure of the

19  information stored therein—would result in the increased risk of identity theft and fraud

20  (financial and medical) against the individuals whose Private Information was compromised, as

21  well as intrusion into the highly private information of themselves and minor children.

22      51.     These risks are not merely theoretical; in recent years, numerous high-profile data

23  breaches have occurred at businesses such as Equifax, Facebook, Yahoo, Marriott, Anthem as

24  well as countless ones in the education industry.

25  _____

26  [3] *See* https://www.bleepingcomputer.com/news/security/powerschool-hack-exposes-student-teacher-data-from-k-12-districts/; https://www.wthr.com/article/news/education/what-is-

27  powerschool-hack-data-breach-how-impacted-students-teachers-families-information-log-in-statement-investigation-stolen-hacker-identity/531-6510d1b7-6c7a-41cc-b877-c5997455f24b (last

28  visited Jan. 9, 2024).

9

52.     PII has considerable value and constitutes an enticing and well-known target to hackers, who can easily sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[4]

53.     Moreover, according to Robert P. Chappell, Jr., a law enforcement professional, fraudsters can steal and use a minor's information until the minor turns eighteen years old before the minor even realizes he or she has been the victim of an identity theft crime. [5]

54.     The risk to minor Class members is substantial given their age and lack of established credit.  The information can be used to create a "clean slate identity," and use that identity for obtaining government benefits, fraudulent tax refunds, and other scams.  There is evidence that children are 51% more likely to be victims of identity theft than adults. [6]

55.     Medical information, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.[7]

56.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities.

57.     In 2021 alone, there were 4,145 publicly disclosed data breaches, exposing 22 billion records. The United States specifically saw a 10% increase in the total number of data breaches.[8]

58.     In tandem with the increase in data breaches, the rate of identity theft complaints

---

[4] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited Jan. 9, 2024).

[5] Brett Singer, *What is Child Identity Theft?*, Parents (last visited Jan. 17, 2023), https://www.parents.com/kids/safety/tips/what-is-child-dentity-theft/.

[6] Avery Wolfe, *How Data Breaches Affect Children*, Axion Cyber Sols. (Mar. 15, 2018) (last visited Jan. 18, 2023), https://axioncyber.com/data-breach/how-data-breaches-affect-children/.

[7] *See* Brian O'Connor, *Healthcare Data Breach: What to Know About them and What to Do After One*, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited Jan. 9, 2024).

[8] *Data Breach Report: 2021 Year End*, Risk Based Security (Feb. 4, 2022), https://go.flashpoint-intel.com/docs/2021-Year-End-Report-data-breach-quickview (last visited Jan. 9, 2024).

has also increased over the past few years; for instance, in 2017, 2.9 million people reported some form of identity fraud compared to 5.7 million people in 2021.[9]

59.   Companies storing medical information are prime target for threat actors: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[10]

60.   Indeed, cybercriminals seek out medical information at a greater rate than other sources of personal information. In a 2022 report, the healthcare compliance company Protenus found that there were 905 medical data breaches in 2021, leaving over 50 million patient records exposed for 700 of the 2021 incidents. This is an increase from the 758 medical data breaches that Protenus compiled in 2020.[11]

61.   The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff, her minor child, and Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud and more.

62.   As indicated by Jim Trainor, former second in command at the FBI's cyber security division: "[m]edical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI records can go from $20 say up to—we've even seen $60 or $70."[12]

63.   A complete identity theft kit that includes health insurance credentials may be

---

[9] *Insurance Information Institute, Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited Jan. 9, 2024).

[10] *The healthcare industry is at risk*, SwivelSecure https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited Jan. 9, 2024).

[11] *2022 Breach Barometer*, https://www.protenus.com/breach-barometer-report (last visited Jan. 9, 2024).

[12] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data*, *New Ponemon Study Shows*, IDX (May 14, 2015), https://www.idexpertscorp.com/knowledge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat (last visited Jan. 9, 2024).

worth up to $1,000 on the black market whereas stolen payment card information sells for about $1.[13] According to Experian:

> Having your records stolen in a healthcare data breach can be a prescription for financial disaster. If scam artists break into healthcare networks and grab your medical information, they can impersonate you to get medical services, use your data open credit accounts, break into your bank accounts, obtain drugs illegally, and even blackmail you with sensitive personal details.
>
> ID theft victims often have to spend money to fix problems related to having their data stolen, which averages $600 according to the FTC. But security research firm Ponemon Institute found that healthcare identity theft victims spend nearly $13,500 dealing with their hassles, which can include the cost of paying off fraudulent medical bills.
>
> Victims of healthcare data breaches may also find themselves being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores. In the worst cases, they've been threatened with losing custody of their children, been charged with drug trafficking, found it hard to get hired for a job, or even been fired by their employers.[14]

64.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal

---

[13] *Managing cyber risks in an interconnected world, Key findings from The Global State of Information Security® Survey 2015*, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf  (last visited Jan. 9, 2024).

[14] Brian O'Connor, *Healthcare Data Breach: What to Know About them and What to Do After One*, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited Jan. 9, 2024).

information through means such as spam phone calls and text messages or phishing emails.

65.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

66.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff, her minor child and Class Members.

67.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[15] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

68.     Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including medical identity theft, credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information.

69.     For example, Social Security numbers, which were compromised in the Data Breach, are among the worst kind of Private Information to have been stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social

---

[15] *See* https://www.identitytheft.gov/Steps (last visited Jan. 9, 2024).

CLASS ACTION COMPLAINT

Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiffs and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[16]

70.     What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

71.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[17]

72.     There may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or medical information is stolen and when it is misused.

73.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more

---

[16] *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Jan. 9, 2024).

[17] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back* (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft  (last visited Jan. 9, 2024).

1  before being used to commit identity theft. Further, once stolen data has been sold or posted on

2  the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies

3  that attempt to measure the harm resulting from data breaches cannot necessarily rule out all

4  future harm."[18]

5      74.     Even if stolen PII does not include financial or payment card account information,

6  that does not mean there has been no harm, or that the breach does not cause a substantial risk of

7  identity theft. Freshly stolen information can be used with success against victims in specifically

8  targeted efforts to commit identity theft known as social engineering or spear phishing. In these

9  forms of attack, the criminal uses the previously obtained PII about the individual, such as name,

10  address, email address, and affiliations, to gain trust and increase the likelihood that a victim will

11  be deceived into providing the criminal with additional information.

12      75.     Based on the value of Plaintiff's and Class Members' PII to cybercriminals,

13  Defendant certainly knew the foreseeable risk of failing to implement adequate cybersecurity

14  measures.

15      ***D.     The Data Breach was Preventable.***

16      76.     Defendant did not use reasonable security procedures and practices appropriate to

17  the nature of the sensitive information it was maintaining for Plaintiff, her minor child, and Class

18  Members, causing the exposure of Private Information, such as encrypting the information or

19  deleting it when it is no longer needed.

20      77.     Defendant could have prevented this Data Breach by, among other things,

21  properly encrypting or otherwise protecting their equipment and computer files containing

22  Private Information.

23      78.     To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could

24  and should have implemented numerous measures as recommended by the United States

25  Government, including but not limited to:

26      •  Implementing an awareness and training program;

27

28  [18] *Report to Congressional Requesters, Personal Information* (June 2007),
https://www.gao.gov/new.items/d07737.pdf (last visited Jan. 9, 2024).

CLASS ACTION COMPLAINT

- Enabling strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing;

- Scanning all incoming and outgoing emails to detect threats and filter executable files from reaching end users;

- Configuring firewalls to block access to known malicious IP addresses;

- Setting anti-virus and anti-malware programs to conduct regular scans automatically;

- Managing the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.[19]

79.     Given that Defendant was storing the Private Information of Plaintiff, her minor child, and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

80.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the Private Information of, upon information and good faith belief, thousands of individuals, including that of Plaintiff, her minor child, and Class Members.

### E.     FTC Guidelines Prohibit Defendant from Engaging in Unfair or Deceptive Acts or Practices.

81.     Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

---

[19] How to Protect Your Networks from RANSOMWARE, at 3, available at: https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Jan. 9, 2024).

CLASS ACTION COMPLAINT

82.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[20]

83.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[21]

84.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[22]

85.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

86.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' clients' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

87.     Upon information and belief, Defendant was at all times fully aware of its

---

[20] *Start with Security – A Guide for Business* (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Jan. 9, 2024)

[21] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Jan. 9, 2024)

[22] *Id.*

17

1  obligations to protect the PII of Plaintiff, her minor child and Class Members because of its

2  position as a vendor to educational institutions, which gave it direct access to reams of

3  Plaintiff's, her minor child's and Class Members' Private Information. Defendant was also aware

4  of the significant repercussions that would result from its failure to do so.

5      **F.      *Defendant Violated Industry Standards.***

6      88.    Several best practices have been identified that, at a minimum, should be

7  implemented by entities in possession of Private Information, like Defendant, including but not

8  limited to: educating all employees; strong passwords; multi-layer security, including firewalls,

9  anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-

10 factor authentication; backup data and limiting which employees can access sensitive data.

11 Defendant failed to follow these industry best practices, including a failure to implement multi-

12 factor authentication.

13      89.    Other best cybersecurity practices that are standard include installing appropriate

14 malware detection software; monitoring and limiting the network ports; protecting web browsers

15 and email management systems; setting up network systems such as firewalls, switches and

16 routers; monitoring and protection of physical security systems; protection against any possible

17 communication system; training staff regarding critical points.

18      90.    Defendant failed to meet the minimum standards of any of the following

19 frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation

20 PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5,

21 PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center

22 for Internet Security's Critical Security Controls (CIS CSC), which are all established standards

23 in reasonable cybersecurity readiness.

24      91.    These foregoing frameworks are existing and applicable industry standards for

25 education entities, and upon information and belief, Defendant failed to comply with at least

26 one—or all—of these accepted standards, thereby opening the door to the threat actor and

27 causing the Data Breach.

28      92.    Based on the information currently available from Plaintiff's and her counsel's

18

CLASS ACTION COMPLAINT

investigation, Defendant did not even have basic information security practices in place such as two-factor or multi-factor authentication.

93.     Moreover, the cybercriminal who accessed PowerSchool used an IP address from Ukraine. Had PowerSchool taken the industry standard step of blocking non-US IP addresses from accessing US instances, the Data Breach affecting Plaintiff, her minor child, and Class Members could have been prevented.

**G.     The Monetary Value of Plaintiff's, Her minor Child's & Class Members' Private Information.**

94.     As a result of Defendant's failures, Plaintiff, her minor child, and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information.

95.     From a recent study, 28% of consumers affected by a data breach become victims of identity fraud—this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identifying fraud is only about 3%.[23]

96.     "Actors buying and selling PII  from healthcare institutions and providers in underground marketplaces is very common and will almost certainly remain so due to this data's utility in a wide variety of malicious activity ranging from identity theft and financial fraud to crafting of bespoke phishing lures."[24]

97.     Indeed, a robust "cyber black market" exists in which criminals openly post stolen Private Information on multiple underground Internet websites, commonly referred to as the dark web.

98.     At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information:

---

[23] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last visited Jan. 9, 2024).

[24] *Id.*

> The use of third-party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[25]

99.     Commissioner Swindle's 2001 remarks are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 Billion per year online advertising industry in the United States.[26]

100.    The FTC has also recognized that consumer data is a new (and valuable) form of currency. In an FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit.[27]

101.    Recognizing the high value that consumers place on their Private Information, many companies now offer consumers an opportunity to sell this information.[28]  The idea is to give consumers more power and control over the type of information that they share and who ultimately receives that information.  And, by making the transaction transparent, consumers will make a profit from their Private Information. This business has created a new market for the sale and purchase of this valuable data.

102.    Consumers place a high value not only on their Private Information, but also on

---

[25] *Public Workshop: The Information Marketplace: Merging and Exchanging Consumer Data*, at 8:2-8 (Mar. 13, 2001), https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf (last visited Jan. 9, 2024).

[26] *See* Julia Angwin & Emily Steel, *Web's Hot New Commodity: Privacy* (Feb. 28, 2011), https://www.wsj.com/articles/SB10001424052748703529004576160764037920274 (last visited Jan. 9, 2024).

[27] *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited Jan. 9, 2024).

[28] Angwin & Steel, *supra* note 26.

20

the privacy of that data. Researchers have begun to shed light on how much consumers value their data privacy, and the amount is considerable. Indeed, studies confirm that the average direct financial loss for victims of identity theft in 2014 was $1,349.[29]

103.    The value of Plaintiff's and Class Members' Private Information on the black market is substantial. Sensitive health information can sell for as much as $363.[30]

104.    This information is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

105.    Health information, in particular, is likely to be used in detrimental ways—by leveraging sensitive personal health details and diagnoses to extort or coerce someone, and serious and long-term identity theft.[31]

106.    "Medical identity theft is a great concern not only because of its rapid growth rate, but because it is the most expensive and time consuming to resolve of all types of identity theft. Additionally, medical identity theft is very difficult to detect which makes this form of fraud extremely dangerous."[32]

107.    Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience

---

[29] *See* U.S. Dep't of Justice, *Victims of Identity Theft,* OFFICE OF JUSTICE PROGRAMS: BUREAU OF JUSTICE STATISTICS 1 (Nov. 13, 2017), https://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited Jan. 9, 2024).

[30] *Data Breaches: In the Healthcare Sector*, https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last visited Jan. 9, 2024).

[31] *Id.*

[32] *The Potential Damages and Consequences of Medical Identity theft and Healthcare Data Breaches*, https://www.experian.com/innovation/thought-leadership/medical-identity-theft-healthcare-data-breaches.jsp (last visited Jan. 9, 2024).

21

financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[33]

108.   The FTC has warned consumers of the dangers of medical identity theft, stating that criminals can use personal information like a "health insurance account number or Medicare number" to "see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care." The FTC further warns that instances of medical identity theft "could affect the medical care you're able to get or the health insurance benefits you're able to use[,]" while also having a negative impact on credit scores.[34]

109.   The ramifications of Defendant's failure to keep Plaintiff's, her minor child's, and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for 6 to 12 months or even longer.

110.   Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened.[35] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[36]

111.   Indeed, when compromised, healthcare-related data is among the most private and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to

---

[33] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KAISER (Feb. 7, 2014) https://khn.org/news/rise-of-indentity-theft/ (last visited Jan. 9, 2024).

[34] *What to Know About Medical Identity Theft*, What To Know About Medical Identity Theft | Consumer Advice (ftc.gov) (last visited Jan. 9, 2024).

[35] *See Medical ID Theft Checklist*, https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last visited Jan. 9, 2024).

[36] *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches* (Apr. 2010), https://www.experian.com/innovation/thought-leadership/medical-identity-theft-healthcare-data-breaches.jsp  (last visited Jan. 9, 2024).

restore coverage.[37]

112.    Almost 50% of the surveyed victims lost their healthcare coverage as a result of the incident, while nearly 30% said their insurance premiums went up after the event. Forty percent of the victims were never able to resolve their identity theft at all. Seventy-four percent said that the effort to resolve the crime and restore their identity was significant or very significant. Data breaches and identity theft, including medical identity theft, have a crippling effect on individuals and detrimentally impact the economy as a whole.[38]

113.    At all relevant times, Defendant was well-aware, or reasonably should have been aware, that the Private Information it maintains is highly sensitive and could be used for wrongful purposes by third parties, such as identity theft (including medical identity theft) and fraud.

114.    Upon information and good faith belief, had Defendant remedied the deficiencies in its security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it would have prevented the ransomware attack into their systems and, ultimately, the theft of the Private Information of Plaintiff, her minor child and Class Members within their systems.

115.    The compromised Private Information in the Data Breach is of great value to hackers and thieves and can be used in a variety of ways. Information about, or related to, an individual for which there is a possibility of logical association with other information is of great value to hackers and thieves.

116.    Indeed, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[39] For example,

---

[37] Elinor Mills, *Study: Medical identity theft is costly for victims* (March 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited Jan. 9, 2024).

[38] *Id.*

[39] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for*

CLASS ACTION COMPLAINT

1  different PII elements from various sources may be able to be linked in order to identify an

2  individual, or access additional information about or relating to the individual.[40]

3        117.    Based upon information and belief, the unauthorized parties have already utilized,

4  and will continue utilize, the Private Information they obtained through the Data Breach to

5  obtain additional information from Plaintiff, her minor child and Class Members that can be

6  misused.

7        118.    In addition, as technology advances, computer programs may scan the Internet

8  with wider scope to create a mosaic of information that may be used to link information to an

9  individual in ways that were not previously possible. This is known as the "mosaic effect."

10        119.    Names and dates of birth, combined with contact information like telephone

11  numbers and email addresses, are very valuable to hackers and identity thieves as it allows them

12  to access users' other accounts.

13        120.    Thus, even if payment card information were not involved in the Data Breach, the

14  unauthorized parties could use Plaintiff's, her minor child's and Class Members' Private

15  Information to access accounts, including, but not limited to email accounts and financial

16  accounts, to engage in the fraudulent activity identified by Plaintiff.

17        121.    Given these facts, any company that transacts business with customers and then

18  compromises the privacy of customers' Private Information has thus deprived customers of the

19  full monetary value of their transaction with the company.

20        122.    In short, the Private Information exposed is of great value to hackers and cyber

21  criminals and the data compromised in the Data Breach can be used in a variety of unlawful

22  manners, including opening new credit and financial accounts in users' names.

23        **H.    *Plaintiff, John Doe & Class Members Have Suffered Compensable Damages.***

24        123.    For the reasons mentioned above, Defendant's conduct, which allowed the Data

25

26  *Businesses and Policymakers, Preliminary FTC Staff Report*, at 35-38 (Dec. 2010),
   https://www.ftc.gov/reports/preliminary-ftc-staff-report-protecting-consumer-privacy-era-rapid-

27  change-proposed-framework (last visited Jan. 9, 2024).

28  [40] *See id.* (evaluating privacy framework for entities collecting or using consumer data with can be
   "reasonably linked to a specific consumer, computer, or other device").

24

Breach to occur, caused Plaintiff, her minor child and Class Members significant injuries and harm in several ways.

124.    The risks associated with identity theft, including medical identity theft, are serious. While some identity theft victims can resolve their problems quickly, others spend hundreds to thousands of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit.

125.    In order to mitigate against the risks of identity theft and fraud, Plaintiff, her minor child and members of the Class must immediately devote time, energy, and money to: 1) closely monitor their credit and financial accounts, medical statements, bills, and records; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

126.    Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff, her minor child and Class Members will need to maintain these heightened measures for years, and possibly their entire lives as a result of Defendant's conduct.

127.    Further, the value of Plaintiff's, her minor child's and Class Members' PII has been diminished by its exposure in the Data Breach.

128.    Plaintiff, her minor child and Class Members now face a greater risk of identity theft, including medical and financial identity theft.

129.    Plaintiff, her minor child and Class Members are also at a continued risk because their information remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect Plaintiff's, her

25

minor child's and Class Members' PII.

130.    Plaintiff, her minor child and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their private medical information to strangers.

131.    Plaintiff, her minor child and Class Members also did not receive the full benefit of their bargain when paying for educational services. Instead, they received services of a diminished value to those described in their agreements with Defendant. Plaintiff, her minor child and Class Members were damaged in an amount at least equal to the difference in the value between the services they thought they paid for (which would have included adequate data security protection) and the services they actually received.

132.    Plaintiff, her minor child and Class Members would not have obtained services from Defendant had they known that Defendant failed to properly train its employees, lacked safety controls over its computer network, and did not have proper data security practices to safeguard their Private Information from criminal theft and misuse.

133.    Finally, in addition to a remedy for the economic harm, Plaintiff, her minor child and Class Members maintain an undeniable interest in ensuring that their Private Information remains secure and is not subject to further misappropriation and theft.

## **REPRESENTATIVE PLAINTIFF'S EXPERIENCE**

### *Plaintiff Valerie Martinez-Turnbow and her minor child John Doe*

134.    Plaintiff Valerie Martinez-Turnbow's minor child, identified herein as John Doe, attends a school that utilized PowerSchool's SIS platform.

135.    As a condition of Ms. Martinez-Turnbow and her son attending school in his school district, in or about 2009 Plaintiff and John Doe were required to provide their Private Information to Defendant, including name, date of birth, contact information, Social Security number, and other sensitive information.

136.    At the time of the Data Breach—December 28, 2024—Defendant maintained Plaintiff's and John Doe's Private Information in its system.

137.    Plaintiff is very careful about sharing her and her minor child's Private

26

Information. Plaintiff stores any documents containing her or her minor child's Private

Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted

sensitive Private Information over the internet or any other unsecured source. Plaintiff would not

have entrusted her or her minor child's Private Information to Defendant, or used Defendant's

services at all, had she known of Defendant's lax data security policies and procedures.

138.    In fact, Plaintiff has gone out of her way to opt out of as much data collection

from Defendant as possible. Regardless, due to Defendant's failures to follow industry standards

and commonsense cyber security practices, she and her minor son's data was breached.

139.    On or about January 8, 2025, Plaintiff received an email from the Superintendent

of her minor son's school district concerning the Data Breach (the "Notice Letter"). The Notice

Letter stated:

> Dear Lovejoy Parents,
>
> Lovejoy ISD utilizes a cloud hosted Student Information System, PowerSchool, to store and organize student and staff information. Yesterday afternoon, January 7, 2025, we were notified by PowerSchool that they have experienced a data breach of customers' student and staff information. Based on news reports, this appears to have impacted customers nationwide. A full investigation into the exact cause is being conducted by PowerSchool through forensic auditing of the breach. We will share additional information as we are able, without compromising the pending investigation.
>
> PowerSchool has communicated that they have contained the incident, notified law enforcement, and will provide resources and support to impacted customers. We will be working closely with PowerSchool and will be providing more information to our families as it becomes available, but did not want to delay the initial notification to Lovejoy ISD families so that all individuals can be vigilant while the District is gathering more information from PowerSchool.

140.    The Notice Letter included a forwarded message that PowerSchool sent to the

affected school districts on January 7, 2025:

> Dear Valued Customer,
>
> As the Technical Contact for your district or school, we are reaching out to inform you that on December 28, 2024, PowerSchool become

CLASS ACTION COMPLAINT

aware of a potential cybersecurity incident involving unauthorized access to certain information through one of our community-focused customer support portals, PowerSource. Over the succeeding days, our investigation determined that an unauthorized party gained access to certain PowerSchool Student Information System ("SIS") customer data using a compromised credential, and we regret to inform you that your data was accessed.

Please review the following information and be sure to share this with relevant security individuals at your organization.

As soon as we learned of the potential incident, we immediately engaged our cybersecurity response protocols and mobilized a cross-functional response team, including senior leadership and third-party cybersecurity experts. We have also informed law enforcement.

We can confirm that the information accessed belongs to certain SIS customers and relates to families and educators, including those from your organization. The unauthorized access point was isolated to our PowerSource portal. As the PowerSource portal only permits access to the SIS database, **we can confirm no other PowerSchool products were affected as a result of this incident**.

Importantly, the incident is contained, and we have no evidence of malware or continued unauthorized activity in the PowerSchool environment. PowerSchool is not experiencing, nor expects to experience, any operational disruption and continues to provide services as normal to our customers.

Rest assured, we have taken all appropriate steps to prevent the data involved from further unauthorized access or misuse. We do not anticipate the data being shared or made public, and we believe it has been deleted without any further replication or dissemination.

We have also deactivated the compromised credential and restricted all access to the affected portal. Lastly, we have conducted a full password reset and further tightened password and access control for all PowerSource customer support portal accounts.

PowerSchool is committed to working diligently with customers to communicate with your educators, families, and other stakeholders. We are equipped to conduct a thorough notification process to all impacted individuals. Over the coming weeks, we ask for your patience and collaboration as we work through the details of this notification process.

We have taken all appropriate steps to further prevent the exposure of information affected by this incident. While we are unaware of and

do not expect any actual or attempted misuse of personal information or any financial harm to impacted individuals as a result of this incident, PowerSchool will be providing credit monitoring to affected adults and identity protection services to affected minors in accordance with regulatory and contractual obligations. The particular information compromised will vary by impacted customer. We anticipate that only a subset of impacted customers will have notification obligations.

141. Based on the information that PowerSchool has provided to the public, impacted school districts had the Private Information of students and parents (as well as employees) exposed to cybercriminals in the Data Breach, and this information included student Social Security numbers, grades, and medical information, "and other unspecified personally identifiable information belonging to students and teachers".[41]

142. Based on the information provided by Plaintiff's minor child's school district and PowerSchool, Plaintiff's and/or her minor child's Private Information was improperly accessed and obtained by unauthorized third parties, which may include his name, Social Security number, medical information, grades, and unique identifiers used to associate individuals with PowerSchool.

143. Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, reviewing credit monitoring and identity theft protection services, and monitoring her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff has spent significant time dealing with the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured. Plaintiff has doubled this time by trying to take the same steps for her minor child.

144. Plaintiff suffered actual injury from having her and her minor child's Private Information compromised as a result of the Data Breach including, but not limited to: (i)

---

[41] *See* https://techcrunch.com/2025/01/09/powerschool-says-hackers-stole-students-sensitive-data-including-social-security-numbers-in-data-breach/ (last visited Jan. 9, 2024).

CLASS ACTION COMPLAINT

invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

145.    Plaintiff and her minor child additionally suffered actual injury in the form of their Private Information being disseminated, on information and belief, on the dark web as a result of the Data Breach.

146.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence. This fear, anxiety, and stress has been further multiplied by Plaintiff's serious concern for her minor child and the impact on his credit and life before he has even reached adulthood.

147.    Plaintiff's long-term concern for her minor child is increased by the fact that fraudsters can steal and use a minor's information until the minor turns eighteen years old before the minor even realizes he or she has been the victim of an identity theft crime. [42] There is also evidence that children are 51% more likely to be victims of identity theft than adults. [43]

148.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach for her and her minor child.

[42] Brett Singer, *What is Child Identity Theft?*, Parents (last visited Jan. 17, 2023), https://www.parents.com/kids/safety/tips/what-is-child-dentity-theft/.

[43] Avery Wolfe, *How Data Breaches Affect Children*, Axion Cyber Sols. (Mar. 15, 2018) (last visited Jan. 18, 2023), https://axioncyber.com/data-breach/how-data-breaches-affect-children/.

CLASS ACTION COMPLAINT

149.    As a result of the Data Breach, Plaintiff and her minor child are at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

150.    Plaintiff and her minor child have a continuing interest in ensuring that their Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

151.    Plaintiff brings this class action on behalf of herself and as a parent and guardian of her minor child, and all other individuals who are similarly situated pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

152.    Plaintiff seeks to represent a Nationwide Class of persons to be defined as follows:

> **All individuals residing in the United States whose PII was compromised in the Defendant's Data Breach which occurred in or about December 2024 (the "Nationwide Class").**

153.    Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families, all judges assigned to hear any aspect of this litigation, their immediate family members, and those individuals who make a timely and effective election to be excluded from this matter using the correct protocol for opting out.

154.    This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when Plaintiff moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

155.    **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breach, but based on public information, the

31

1   Class includes many thousands of individuals, if not substantially more.

2       156.   **Commonality:** This action involved questions of law and fact common to the

3   Class that predominate over any questions affecting solely individual members of the Class.

4   Such common questions include but are not limited to:

5       a.     Whether Defendant failed to timely notify Plaintiff, her minor child and Class

6   Members of the Data Breach;

7       b.     Whether Defendant had a duty to protect the PII of Plaintiff, her minor child and

8   Class Members;

9       c.     Whether Defendant had respective duties not to disclose the PII of Plaintiff, her

10  minor child and Class Members to unauthorized third parties;

11      d.     Whether Defendant had respective duties not to disclose the PII of Plaintiff, her

12  minor child and Class Members for non-business purposes;

13      e.     Whether Defendant failed to adequately safeguard the PII of Plaintiff, her minor

14  child and Class Members;

15      f.     Whether and when Defendant actually learned of the Data Breach;

16      g.     Whether Defendant was negligent in collecting and storing Plaintiff's and Class

17  Members' PII, and breached its duties thereby;

18      h.     Whether Defendant adequately, promptly, and accurately informed Plaintiff, her

19  minor child and Class Members that their PII had been compromised;

20      i.     Whether Defendant violated the law by failing to promptly notify Plaintiff, her

21  minor child and Class Members that their PII had been compromised;

22      j.     Whether Defendant failed to implement and maintain reasonable security

23  procedures and practices appropriate to the nature and scope of the information compromised in

24  the Data Breach;

25      k.     Whether Defendant adequately addressed and fixed the vulnerabilities that

26  allowed the Data Breach to occur;

27      l.     Whether Defendant was negligent and that negligence resulted in the Data

28  Breach;

1    m.    Whether Defendant entered into an implied contract with Plaintiff, her minor

2 child and Class Members;

3    n.    Whether Defendant breached that contract by failing to adequately safeguard

4 Plaintiff's and Class Members' PII ;

5    o.    Whether Defendant were unjustly enriched;

6    p.    Whether Plaintiff, her minor child and Class Members are entitled to actual,

7 statutory, and/or nominal damages as a result of Defendant's wrongful conduct; and

8    q.    Whether Plaintiff, her minor child and Class Members are entitled to injunctive

9 relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

10    157.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the

11 Class. The claims of the Plaintiff and members of the Class are based on the same legal theories

12 and arise from the same unlawful and willful conduct. Plaintiff and members of the Class were

13 all students, students' parents, or employees, of Defendant, each having their PII exposed and/or

14 accessed by an unauthorized third party.

15    158.    **Policies Generally Applicable to the Class:** This class action is also appropriate

16 for certification because Defendant acted or refused to act on grounds generally applicable to the

17 Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

18 of conduct toward the Class Members and making final injunctive relief appropriate with respect

19 to the Class as a whole. Defendant's policies challenged herein apply to and affect Class

20 Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct

21 with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

22    159.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class

23 because Plaintiff's interests do not conflict with the interests of the members of the Class.

24 Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members

25 of the Class and have no interests antagonistic to the members of the Class. In addition, Plaintiff

26 has retained counsel who are competent and experienced in the prosecution of class action

27 litigation. The claims of Plaintiff and the Class Members are substantially identical as explained

28 above.

CLASS ACTION COMPLAINT

160.    **Superiority and Manageability:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

161.    Class action Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

162.    The nature of this action and the nature of laws available to Plaintiff, her minor child and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff, her minor child and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

163.    The litigation of the claims brought herein is manageable. Defendant's uniform

34

conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

164.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

165.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

166.    Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

167.    Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendant failed to timely notify the Plaintiff and the class of the Data Breach;

    b.  Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

    c.  Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    d.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

    e.  Whether Defendant failed to take commercially reasonable steps to safeguard Private Information; and

CLASS ACTION COMPLAINT

f.   Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

168.   **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its duty to Plaintiff, her minor child and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

169.   **Injunctive Relief:** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23 (b)(2).

170.   **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class Members may be readily identified through Defendant's books and records.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>

**Negligence**

(***<u>On behalf of Plaintiff, her minor child & the Nationwide Class</u>***)

171.   Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

172.   Plaintiff brings this claim individually and as a parent and guardian of her minor child, and on behalf of the Class.

173.   Defendant owed a duty under common law to Plaintiff, her minor child and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in Defendant's possession from being compromised, lost, stolen,

36

accessed, and misused by unauthorized persons.

174.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

175.    Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff, her minor child and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of the Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

176.    Defendant's duty also arose from Defendant's position as a provider of educational support services. Defendant holds itself out as trusted provider of educational support services, and thereby assumes a duty to reasonably protect Plaintiff's and Class Members' information. Indeed, Defendant was in a unique and superior position to protect against the harm suffered by Plaintiff, her minor child and Class Members as a result of the Data Breach.

177.    Defendant breached the duties owed to Plaintiff, her minor child and Class Members and thus was negligent. As a result of a successful attack directed towards Defendant that compromised Plaintiff's  and Class Members' PII, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of Plaintiff's and Class Members' information that resulted in the unauthorized access and compromise of PII; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to Plaintiff, her minor child and Class Members; and (h) failing to adequately train and supervise

CLASS ACTION COMPLAINT

employees and third party vendors with access or credentials to systems and databases containing sensitive PII.

178. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff, her minor child and Class Members, their PII would not have been compromised.

179. As a direct and proximate result of Defendant's negligence, Plaintiff, her minor child and Class Members have suffered injuries, including:

    a.    Theft of their PII;

    b.    Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

    c.    Costs associated with purchasing credit monitoring and identity theft protection services;

    d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

    e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

    f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    g.    Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

    h.    Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;

    i.    Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff, her minor child and Class Members;

    j.    The diminished value of the services they paid for and received, and

    k.    Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff, her minor child and Class Members.

180. As a direct and proximate result of Defendant's negligence, Plaintiff, her minor child and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

CLASS ACTION COMPLAINT

## COUNT II

### Breach of Implied Contract

#### (*On behalf of Plaintiff, her minor child & the Nationwide Class*)

181.    Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

182.    Plaintiff brings this claim individually, on behalf of her minor child, and on behalf of the Class.

183.    When Plaintiff, her minor child and Class Members provided their PII to Defendant, they entered into implied contracts with Defendant, under which Defendant agreed to take reasonable steps to protect Plaintiff's and Class Members' PII, comply with their statutory and common law duties to protect Plaintiff's and Class Members' PII, and to timely notify them in the event of a data breach.

184.    Defendant solicited and invited Plaintiff, her minor child and Class Members to provide their PII as part of Defendant's provision of healthcare services. Plaintiff, her minor child and Class Members accepted Defendant's offers and provided their PII to Defendant.

185.    Implicit in the agreement between Plaintiff, her minor child and Class Members and Defendant, was Defendant's obligation to: (a) use such PII for business purposes only; (b) take reasonable steps to safeguard Plaintiff's and Class Members' PII ; (c) prevent unauthorized access and/or disclosure of Plaintiff's and Class Members' PII ; (d) provide Plaintiff, her minor child and Class Members with prompt and sufficient notice of any and all unauthorized access and/or disclosure of their PII ; (e) reasonably safeguard and protect the PII of Plaintiff, her minor child and Class Members from unauthorized access and/or disclosure; and (f) retain Plaintiff's and Class Members' PII under conditions that kept such information secure and confidential.

186.    When entering into implied contracts, Plaintiff, her minor child and Class Members reasonably believed and expected that Defendant's data security practices complied with their statutory and common law duties to adequately protect Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

187.    Plaintiff, her minor child and Class Members paid money to Defendant in

39

exchange for services, along with Defendant's promise to protect their PII from unauthorized access and disclosure. Plaintiff, her minor child and Class Members reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security. Defendant failed to do so.

188.    Plaintiff, her minor child and Class Members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely notice of a data breach.

189.    Plaintiff, her minor child and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

190.    Defendant breached its implied contracts with Plaintiff, her minor child and Class Members by failing to safeguard their PII and by failing to provide them with timely and accurate notice of the Data Breach

191.    The losses and damages Plaintiff, her minor child and Class Members sustained, include, but are not limited to:

    a.    Theft of their PII;
    b.    Costs associated with purchasing credit monitoring and identity theft protection services;
    c.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;
    d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;
    e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;
    f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;
    g.    Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;
    h.    Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiff's

and Class Members' data;

       i.      Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff, her minor child and Class Members;

       j.      The diminished value of the services they paid for and received; and

       k.      Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff, her minor child and Class Members.

192.    As a direct and proximate result of Defendant's breach of contract, Plaintiff, her minor child and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

193.    Plaintiff, her minor child and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (1) strength its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) immediately provide and continue to provide adequate credit monitoring to Plaintiff and all Class Members.

### COUNT III

**Breach of Fiduciary Duty**

***(On behalf of Plaintiff, her minor child & the Nationwide Class)***

194.    Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

195.    Given the relationship between Defendant and Plaintiff, her minor child and Class Members, where Defendant became guardian of Plaintiff's and Class members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff, her minor child and Class Members, (1) for the safeguarding of Plaintiff, her minor child and Class Members' PII; (2) to timely notify Plaintiff, her minor child and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

196.    Defendant has a fiduciary duty to act for the benefit of Plaintiff, her minor child and Class Members upon matters within the scope of Defendant's relationship with them— especially to secure their PII.

CLASS ACTION COMPLAINT

197. Because of the highly sensitive nature of the PII, Plaintiff, her minor child and Class Members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

198. Defendant breached its fiduciary duties to Plaintiff, her minor child and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

199. Defendant also breached its fiduciary duties to Plaintiff, her minor child and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

200. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff, her minor child and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## COUNT IV

### Invasion of Privacy

#### *(On behalf of Plaintiff, her minor child & the Nationwide Class)*

201. Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

202. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

203. Defendant owed a duty to its current and former users, including Plaintiff and the Class, to keep this information confidential.

204. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff, her minor child and Class Members' PII is highly offensive to a reasonable person.

205. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their

42

1   information would be kept confidential and protected from unauthorized disclosure. Plaintiff and

2   the Class were reasonable in their belief that such information would be kept private and would

3   not be disclosed without their authorization.

4          206.   The Data Breach constitutes an intentional interference with Plaintiff's and the

5   Class's interest in solitude or seclusion, either as to their person or as to their private affairs or

6   concerns, of a kind that would be highly offensive to a reasonable person.

7          207.   Defendant acted with a knowing state of mind when it permitted the Data Breach

8   because it knew its information security practices were inadequate.

9          208.   Defendant acted with a knowing state of mind when it failed to notify Plaintiff

10  and the Class in a timely fashion about the Data Breach, thereby materially impairing their

11  mitigation efforts.

12         209.   Acting with knowledge, Defendant had notice and knew that its inadequate

13  cybersecurity practices would cause injury to Plaintiff and the Class.

14         210.   As a proximate result of Defendant's acts and omissions, the private and sensitive

15  PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and

16  redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed

17  *supra*).

18         211.   And, on information and belief, Plaintiff's PII has already been published—or

19  will be published imminently—by cybercriminals on the Dark Web.

20         212.   Unless and until enjoined and restrained by order of this Court,

21         213.   Defendant's wrongful conduct will continue to cause great and irreparable injury

22  to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate

23  cybersecurity system and policies.

24         214.   Plaintiff and the Class have no adequate remedy at law for the injuries relating to

25  Defendant's continued possession of their sensitive and confidential records. A judgment for

26  monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the

27  Class.

28         215.   In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class

43

members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## COUNT V

### Declaratory Judgment and Injunctive Relief

### (*On behalf of Plaintiff, her minor child & the Nationwide Class*)

216.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

217.    Plaintiff brings this claim individually, on behalf of her minor child, and on behalf of the Class.

218.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

219.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff's and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her PII and remains at imminent risk that further compromises of her PII will occur in the future.

220.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owes a legal duty to secure users' PII and to timely notify users of a data breach under the common law, Section 5 of the FTC Act; and
    b.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure students', parents' and employees' PII.

221.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to

1   protect users' PII.

2       222.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an

3   adequate legal remedy, in the event of another data breach at Defendant's properties.

4       223.    The risk of another such breach is real, immediate and substantial.

5       224.    If another breach of Defendant's store of student, parent, and employee data

6   occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries

7   are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same

8   conduct.

9       225.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to

10  Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft

11  and other damage. On the other hand, the cost to Defendant of complying with an injunction by

12  employing reasonable prospective data security measures is relatively minimal, and Defendant

13  has a pre-existing legal obligation to employ such measures.

14      226.    Issuance of the requested injunction will not disserve the public interest. In

15  contrast, such an injunction would benefit the public by preventing another data breach at

16  Defendant [what], thus eliminating the additional injuries that would result to Plaintiff, her minor

17  child and Class Members whose confidential information would be further compromised.

18                              **COUNT VI**

19                          **Unjust Enrichment**

20          ***(On behalf of Plaintiff, her minor child & the Nationwide Class)***

21      227.    Plaintiff restates and realleges all preceding factual allegations above as if fully set

22  forth herein, and pleads the following count in the alternative.

23      228.    Plaintiff brings this claim individually, on behalf of her minor child, and on behalf

24  of the Class.

25      229.    Upon information and belief, Defendant funded its data security measures from its

26  general revenue including payments made by or on behalf of Plaintiff, her minor child and Class

27  Members.

28      230.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class

                                        45

1   Members is to be used to provide a reasonable level of data security, and the amount of the

2   portion of each payment made that is allocated to data security is known to Defendant.

3       231.    Plaintiff, her minor child and Class Members conferred a monetary benefit on

4   Defendant. Specifically, they purchased healthcare services from Defendant and/or their agents

5   and in so doing provided Defendant with their PII.

6       232.    In exchange, Plaintiff, her minor child and Class Members should have received

7   from Defendant the goods and services that were the subject of the transaction and have their PII

8   protected with adequate data security.

9       233.    Defendant knew that Plaintiff, her minor child and Class Members conferred a

10  benefit which Defendant accepted. Defendant profited from these transactions and used the PII

11  of Plaintiff, her minor child and Class Members for business purposes.

12      234.    In particular, Defendant enriched themselves by saving the costs it reasonably

13  should have expended on data security measures to secure Plaintiff's and Class Members PII.

14  Instead of providing a reasonable level of data security that would have prevented the Data

15  Breach, Defendant instead calculated to increase its own profits and the expense of Plaintiff, her

16  minor child and Class Members by utilizing cheaper, ineffective data security measures.

17      235.    Under the principles of equity and good conscience, Defendant should not be

18  permitted to retain the money belonging to Plaintiff, her minor child and Class Members because

19  Defendant failed to implement appropriate data management and security measures that are

20  mandated by their common law and statutory duties.

21      236.    Defendant failed to secure Plaintiff, her minor child and Class Members' PII and,

22  therefore, did not provide full compensation for the benefit Plaintiff, her minor child and Class

23  Members conferred upon Defendant.

24      237.    Defendant acquired Plaintiff's and Class Members' PII through inequitable means

25  in that it failed to disclose the inadequate security practices previously alleged.

26      238.    If Plaintiff, her minor child and Class Members knew that Defendant had not

27  reasonably secured their PII, they would not have agreed to provide their PII to Defendant.

28      239.    Plaintiff, her minor child and Class Members have no adequate remedy at law.

46

240.   As a direct and proximate result of Defendant's conduct, Plaintiff, her minor child and Class Members have suffered injuries, including:

    a.   Theft of their PII;

    b.   Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

    c.   Costs associated with purchasing credit monitoring and identity theft protection services;

    d.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

    e.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

    f.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    g.   Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

    h.   Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;

    i.   Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff, her minor child and Class Members;

    j.   The diminished value of the services they paid for and received; and

    k.   Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff, her minor child and Class Members.

241.   As a direct and proximate result of Defendant's conduct, Plaintiff, her minor child and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses.

242.   Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff, her minor child and Class Members, proceeds that it unjustly

47

received from them. In the alternative, Defendant should be compelled to refund the amounts
that Plaintiff, her minor child and Class Members overpaid for Defendant's services.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, her minor child, and other Class
Members, prays for judgment against Defendant and respectfully requests this Court to enter an
Order:

A.   certifying the Nationwide Class and appointing Plaintiff and Plaintiff's
     Counsel to represent the Class;

B.   awarding equitable relief enjoining Defendant from engaging in the
     wrongful conduct complained of herein pertaining to the misuse and/or
     disclosure of the Private Information of Plaintiff, her minor child and
     Class Members;

C.   awarding injunctive relief requested by Plaintiff, including, but not limited
     to, injunctive and other equitable relief as is necessary to protect the
     interests of Plaintiff, her minor child and Class Members;

D.   awarding all damages available at equity or law, including, but not limited
     to, actual, consequential, punitive, statutory and nominal damages, as
     allowed by law in an amount to be determined;

E.   awarding attorney fees, costs, and litigation expenses, as allowed by law;

F.   awarding prejudgment interest on all amounts awarded and

G.   awarding all such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and other members of the proposed Class, hereby demands a
jury trial on all issues so triable.


Dated: January 13, 2025                          Respectfully Submitted,

CLASS ACTION COMPLAINT

1

2

**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**

3

By: /s/ *Sara B. Craig*

4

SARA BETH CRAIG (Bar No. 301290)
555 Montgomery Street, Ste. 820

5

San Francisco, CA 94111
Telephone: 415-766-3544

6

Facsimile: 415-840-9435
Email: scraig@peifferwolf.com

7

8

BRANDON M. WISE*
IL Bar # 6319580*

9

One US Bank Plaza, Suite 1950
St. Louis, MO 63101

10

Ph: (314) 833-4825
bwise@peifferwolf.com

11

12

ANDREW R. TATE*
GA Bar # 518068*

13

235 Peachtree St. NE, Suite 400
Atlanta, GA 30303

14

Ph: 404-282-4806
atate@peifferwolf.com

15

16

* *pro hac vice* forthcoming

17

18

19

20

21

22

23

24

25

26

27

28

49

CLASS ACTION COMPLAINT